## Case No. 17,193.

### The WARREN.

[12 N. Y. Leg. Obs. 257.]

District Court, S. D. New York. 1853.[1]

EXTRA PILOTAGE—DISABLED VESSEL.

The ship Warren had lost her rudder, bowsprit, foretop-gallant mast, maintop-gallant-mast, and had rigged temporary substitutes. A pilot took charge of her 60 miles outside Sandy Hook, bearing E. S. E., and navigated her to within 15 miles of the Hook, when a steamboat took her in tow. The ship had on board some sixty passengers. *Held*, that the pilot was entitled to $100 over and above the regular off-shore pilotage, on account of superadded responsibility, hazard and risk, resulting from the disabled condition of the vessel.

W. Q. Morton and H. Morton, for the pilot.

Peter Y. Cutler and Charles H. Hunt, for the ship.

BETTS, District Judge. The libellant is a pilot, following the business of piloting vessels to sea from the port of New York, and from sea into that port. Whilst cruising in pursuit of vessels wanting a pilot on the 21st of March, 1851, he fell in with the ship Warren, sixty miles east-southeast off Sandy Hook, bound to this port. No flag was flying for a pilot, and no application was made to the libellant to come in aid of the ship; but the libellant boarded her and offered his services as a pilot, and was accepted as such by the master. The ship had then been over one hundred days at sea on her voyage from Glasgow to New York. Soon after leaving port she had encountered violent weather, and had lost thereby her rudder, bowsprit, foretopmast, foretop-gallant-mast, maintop-gallant-mast, and head of her maintop-mast. A temporary rudder had been rigged with hawsers, planks, etc., with which she was steered by tackles and guys geered to the wheel. A spar had been substituted for the bowsprit, which was broken short off, and a jury foretop-mast and top-gallant-mast had been rigged. With these arrangements the ship could tack and wear and had been navigated over twenty-eight hundred miles. The ship, after being taken charge of by the libellant, was navigated with some delay and difficulty to within about 15 miles of Sandy Hook, when the master employed a steamboat to tow her into port. The libellant demands for his services ordinary off-shore pilotage to the amount of $52.44, and, in addition thereto, $100 as extra pilotage compensation in the nature of salvage. The master of the ship was ready and offered to pay the ordinary off-shore pilotage, admitted to be $52.44, but refused to pay

extra pilotage. That amount was duly tendered and paid into court. A libel was thereupon filed and process taken out against the ship in rem and in personam against the master to recover those demands.

It is in proof that the ordinary voyage of a ship like the Warren from Glasgow to New York, in the winter season, if in a seaworthy condition, would be forty days, and fifty days would be a long voyage. It is also in proof that in her crippled state the ship would be in imminent danger in approaching land if the weather was unfavorable, and that there would be great difficulty and hazard in working her off the coast in a gale, and that additional delay, hazard and responsibility would be imposed on a pilot bringing her in, during ordinary weather, as she was found. No contract being made between the master and the libellant, these considerations afford a proper ground for claiming extra compensation for services which are not merely those of pilotage. In the case of The Dido, in this court [Case No. 3,900], the circuit court on appeal allowed extra pilotage, and awarded $162 compensation for towing her into port by the pilot boat, because her rudder was lost and there was difficulty in steering her by sails. The Dido was a smaller vessel and much nearer the port, and was brought to anchor within six or seven hours after the pilot took possession of her. The Warren is a large ship, and the libellant was occupied a day and night in working her up to where the steamboat took her in tow.

The general principle is that double pilotage is payable for conducting a vessel in a crippled state (2 Hagg. 178, note). or a remuneration equivalent to the extra service, including the distance, labor and hazard of the piloting service. The Dido [supra] U. S. Cir. Ct., Dec., 1840, S. D. N. Y. Double pilotage over mere pilot ground would not, in my opinion, be a reasonable reward for the time and risk involved in those services. But I do not find in the proofs evidence of that extraordinary degree of skill or benefit bestowed by the libellant which should give him a right to a compensation of a special magnitude, nor even equal to what would have been readily paid by owners or insurers to a steam vessel for taking the ship in tow at that point. I think, considering the defective condition of the ship, the season of the year, her proximity to the coast, and the distance she had to be navigated under circumstances of serious disadvantage, that the libellant is entitled to receive one hundred dollars in addition to the sum paid into court.

Decree for $152.44, with taxed costs.

The above case was argued on appeal before the Hon. Samuel Nelson, Circuit Judge, and the decree affirmed, Sept. 6, 1853. [Case No. 14,101.]

---

[1] [Affirmed in Case No. 14,101.]